

**FILED**

MAR 0 6 2012

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 11 CR 54 |
| | ) | |
| vs. | ) | Judge Charles R. Norgle, Sr. |
| | ) | **MAGISTRATE JUDGE SCHENKIER** |
| JACINTO "JOHN" GABRIEL, JR., | ) | |
| JASSY GABRIEL, | ) | **Violations:** Title 18, United |
| STELLA LUBATON, | ) | States Code, Sections 1349, |
| NESSLI REYES, | ) | 1347, 1956(a)(1)(B)(ii), and 2; |
| CHARITO DELA TORRE, | ) | Title 26, United States Code, |
| RICARDO GONZALES, | ) | Sections 7201, 7206(1), and |
| ROSALIE GONZALES, | ) | 7206(2); Title 42, United States |
| JAMES DAVIS, | ) | Code, Sections 1320a-7b(b)(1)(A) |
| FRANCIS GALANG, | ) | and 1320a-7b(b)(2)(A) |
| MICHAEL PACIS, | ) | |
| REGELINA "QUEENIE" DAVID, and | ) | |
| KENNEDY LOMILLO | ) | |

## SUPERSEDING INDICTMENT

### COUNT ONE
### (Conspiracy to Commit Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY charges:

1.    At times material to Count One of this superseding indictment:

#### The Medicare Program

a.    Medicare was a federally-funded national health care benefit program which provided free or below-cost health care benefits to certain eligible individuals ("Medicare beneficiaries"), primarily individuals over the age of 65.

b.    Medicare covered, among other things, home health care, that is, health care services provided to Medicare beneficiaries suffering from illnesses or disabilities which

confined them to their homes.

      c.      Health care providers, including physicians and home health care agencies, could apply for and obtain a Medicare provider number, enabling them to seek reimbursement for services provided to Medicare beneficiaries.

      d.      Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of United States Department of Health and Human Services. CMS in turn contracted with private health insurance carriers to process Medicare claims and to perform certain administrative functions. In the State of Illinois, CMS contracted with a health insurance carrier known as Palmetto Government Benefits Administrators ("Palmetto GBA").

      e.      It was the primary responsibility of Palmetto GBA to review and process Medicare claims submitted by health care providers who were authorized to participate in the Medicare program ("Medicare providers"). Palmetto GBA paid those claims which appeared, based on the information provided by the Medicare providers, to be eligible for reimbursement under the Medicare program. Payment was made with federal funds.

      f.      When making a claim, the Medicare provider was required to provide certain information, including the patient's name and address, a description of the medical service provided to the patient, the date on which the service was provided, and the Medicare payment code associated with that service. Medicare providers could submit Medicare claims electronically, using a computer software program available from Palmetto GBA.

2

      g.    Medicare providers were entitled to be paid only for medically-necessary services provided to eligible Medicare beneficiaries. With regard to home health care services, Medicare authorized payment under the following circumstances:

        i.    the Medicare beneficiary was "homebound," meaning that his or her ability to leave the home was restricted due to illness or disability;

        ii.    the homebound beneficiary was under the care of a physician who created a specific plan of care for the beneficiary; and

        iii.    the beneficiary's physician signed a Medicare form (Form 485) known as a "Home Health Certification and Plan of Care," setting forth, among other things, the beneficiary's diagnosis, medications, functional limitations, and plan of care, followed by a certification that the beneficiary was homebound, was under that physician's care, and was in need of home health services, such as intermittent skilled nursing care, physical therapy, speech therapy, or occupational therapy.

      h.    Medicare typically approved payment for home health care services provided over 60-day periods of time, each 60-day period known as an "episode of care." After the initial 60-day episode of care, a beneficiary could receive additional 60-day episodes of care, but only if a physician re-certified, in a Form 485, that the beneficiary was still homebound and still in need of home health care services.

      i.    Medicare required the home health care provider to conduct a comprehensive assessment of each patient to determine the patient's eligibility for home

3

health care and the level of skilled care required to adequately care for the patient. In the course of that assessment, the home health care provider was required to gather a specific set of clinical data, known as an Outcome and Assessment Information Set ("OASIS"). Such data typically would be gathered by a nurse in a face-to-face visit with the patient, and recorded on a standard OASIS form.

        j.     Medicare required home health care providers to maintain complete and accurate medical records documenting each patient's need for home health care and the specific services provided to each patient. Among the records required to be maintained by home health care providers were OASIS forms, Forms 485 signed by physicians, and nurses' notes.

        k.     Under federal law:

           i.     physicians who had financial relationships with home health care companies were prohibited from certifying patients and establishing plans of care for patients of such home health care companies, unless a statutory or regulatory exception ("safe harbor") applied to them;

           ii.     physicians were prohibited from soliciting and receiving kickbacks, bribes, and any other remuneration in return for referring individuals for home health care services; and

           iii.     home health care companies were prohibited from submitting claims for reimbursement of services furnished as a result of such illegal financial

4

relationships with physicians, illegal referrals, and kickback payments.

### Perpetual Home Health

l.      Perpetual Home Health, Inc. ("Perpetual") was an Illinois corporation, with a principal place of business at 4821 West 153rd Street, Oak Forest, Illinois.

m.      In 2005, Perpetual applied for enrollment in the Medicare program as a provider of home health care services.  Medicare, through Palmetto GBA, granted Perpetual's application and issued Perpetual a Medicare provider number, effective on or about April 25, 2006, pursuant to which Perpetual could begin participating in the Medicare program and submitting claims for reimbursement of home health services provided to Medicare beneficiaries.  In May 2006, Perpetual submitted to Palmetto GBA an electronic funds transfer authorization agreement, setting forth its bank account information so that it could receive Medicare reimbursement payments directly into one of its bank accounts at JP Morgan Chase Bank.

n.      Between May 2006 and January 2011, Perpetual submitted over 14,000 Medicare claims to Palmetto GBA, seeking reimbursement for home health care services allegedly provided to Medicare beneficiaries.  As a result of those claims, Medicare paid Perpetual, through Palmetto GBA, a total of more than $38,000,000.

### Legacy Home Healthcare Services

o.      Legacy International Services Company, Inc., doing business as Legacy Home Healthcare Services ("Legacy"), was an Illinois corporation located at 4747 West

Peterson Avenue, Suite 311, Chicago, Illinois.

p.     In 2004, Legacy applied for enrollment in the Medicare program as a provider of home health care services. Medicare granted Legacy's application and provided Legacy a Medicare provider number, effective on or about October 13, 2004. Legacy subsequently submitted an electronic funds transfer authorization agreement so that it could receive Medicare payments directly into one of its bank accounts at JP Morgan Chase Bank.

q.     Between 2008 and January 2011, Legacy submitted over 2,000 Medicare claims to Palmetto GBA, seeking reimbursement for home health care services allegedly provided to Medicare beneficiaries. As a result of those claims, Medicare paid Legacy, through Palmetto GBA, a total of more than $6,000,000.

r.     Neither Perpetual nor Legacy had any sources of revenue other than Medicare funds.

**The Defendants**

s.     Defendant JACINTO "JOHN" GABRIEL, JR. was one of the founders of Perpetual. In about 2008, JOHN GABRIEL also became an owner of Legacy. Publicly, JOHN GABRIEL did not identify himself as an owner of Perpetual and Legacy, though he in fact exercised ownership and control over both companies. In particular, JOHN GABRIEL provided direction and exercised control over the Medicare billing policies and practices of Perpetual and Legacy. JOHN GABRIEL had no formal medical training, medical degrees, or licenses to practice as a health care professional.

6

t.    Defendant JASSY GABRIEL, JOHN GABRIEL's brother, was the

nominal majority shareholder of Perpetual (two-thirds ownership interest).    JASSY

GABRIEL also was Perpetual's president.  As such, JASSY GABRIEL had authority to hire,

fire, and pay Perpetual employees.  JASSY GABRIEL also had signatory authority over

Perpetual's bank accounts at JP Morgan Chase Bank.  JASSY GABRIEL was a registered

nurse licensed by the State of Illinois.

u.    Defendant STELLA LUBATON was a corporate officer, administrator,

and minority (one-third) shareholder of Perpetual.  As such, LUBATON had authority to

hire, fire, and pay Perpetual employees.  LUBATON also was a signatory on Perpetual's

bank accounts.  LUBATON was a registered nurse licensed by the State of Illinois.

v.    Defendant NESSLI REYES was the president of Legacy and a part

owner of the company.  REYES also was a registered nurse licensed by the State of Illinois.

w.    Defendant CHARITO DELA TORRE was a physician licensed to

practice medicine in the State of Illinois.

x.    Defendant RICARDO GONZALES was a physician licensed to practice

medicine in the State of Illinois.

y.    Defendants JAMES DAVIS, FRANCIS GALANG, and MICHAEL

PACIS were employed by Perpetual, responsible primarily for entering patient data into

Perpetual's computer system, which data was then used by Perpetual for purposes of billing

Medicare.  DAVIS, GALANG, and PACIS were given training, instructions, and direction

by JOHN GABRIEL.

z.     Defendant REGELINA "QUEENIE" DAVID was employed by
Perpetual as a quality assurance employee, responsible primarily for reviewing patient
records and documentation submitted by Perpetual nurses.

### The Medicare Fraud Conspiracy

2.     Beginning in or about 2006 and continuing through about January 2011, at
Chicago and Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

> JACINTO "JOHN" GABRIEL, JR.,
> JASSY GABRIEL,
> STELLA LUBATON,
> NESSLI REYES,
> CHARITO DELA TORRE,
> RICARDO GONZALES,
> JAMES DAVIS,
> FRANCIS GALANG,
> MICHAEL PACIS, and
> REGELINA "QUEENIE" DAVID,

defendants herein, together with others known and unknown to the Grand Jury (referred to
collectively as "co-conspirators"), conspired to commit health care fraud, that is, to
participate in a scheme to defraud the Medicare program, a health care benefit program
affecting commerce, and to obtain, by means of materially false and fraudulent pretenses,
representations, and promises, money owned by, and under the custody and control of, the
Medicare program, in connection with the delivery of and payment for health care benefits,
items, and services, in violation of Title 18, United States Code, Section 1347.

**Overview of the Conspiracy**

3.     It was part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, STELLA LUBATON, NESSLI REYES, CHARITO DELA TORRE, RICARDO GONZALES, JAMES DAVIS, FRANCIS GALANG, MICHAEL PACIS, REGELINA DAVID, and their co-conspirators knowingly caused Perpetual and Legacy to submit millions of dollars in false and fraudulent Medicare claims, seeking reimbursement for home health care services allegedly provided by Perpetual and Legacy, so that they and their friends and associates could profit from fraudulently-obtained Medicare funds.

4.     It was further part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, LUBATON, REYES, DELA TORRE, GONZALES, DAVIS, PACIS, GALANG, DAVID, and their co-conspirators defrauded the Medicare program through a variety of methods and means, including, but not limited to:

a.     obtaining personal background information of Medicare beneficiaries to be used to fraudulently bill Medicare without the beneficiaries' knowledge or consent;

b.     paying bribes and kickbacks, in cash and by check, directly and indirectly, to medical professionals and others in exchange for referrals of patients to Perpetual and Legacy;

c.     creating and falsifying patient data and records, including nurses' notes and physicians' certifications for home health care services, to support false and fraudulent Medicare claims;

9

d.     submitting reimbursement claims to Medicare for home health care services that were not provided, were not medically necessary, were based on false medical diagnoses and conditions, and were rendered as a result of illegal financial relationships with physicians, illegal referrals, bribes, and kickback payments;

e.     using proceeds of false and fraudulent Medicare claims to pay themselves, their co-conspirators, co-employees, and others who provided assistance in carrying out the conspiracy, and to pay personal expenses, including car loans and home loans; and

f.     concealing the existence of the conspiracy and the distribution of the proceeds of the conspiracy, including by issuing checks to ghost employees and shell companies to conceal the distribution of money to the organizer and leader of the conspiracy, and by issuing checks to third parties to conceal the distribution of money to physicians.

### A. Obtaining Patient Information

5.     It was further part of the conspiracy that JOHN GABRIEL and others collected, from a variety of sources, personal background information of Medicare beneficiaries – including names, Medicare identification numbers, addresses, and telephone numbers – for purposes of enrolling them as patients of Perpetual and Legacy and then billing Medicare, regardless of whether the beneficiaries qualified for home health care coverage, regardless of whether they actually needed home health care services, and regardless of whether they actually wanted home health care services.

10

6.     It was further part of the conspiracy that JOHN GABRIEL and others cold-called Medicare beneficiaries to try to persuade them to enroll with Perpetual and Legacy for home health care services. At times, JOHN GABRIEL misrepresented that he was calling from a doctor's office or from a hospital in an attempt to bolster his credibility.

7.     It was further part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, LUBATON, and REYES hired marketers to find and enroll new patients at Perpetual and Legacy. JOHN GABRIEL provided Medicare beneficiary information to his marketing staff and directed his marketers to call beneficiaries for purposes of enrolling them at Perpetual and Legacy.

8.     It was further part of the conspiracy that JOHN GABRIEL hired nurses and sent them to Medicare beneficiaries' homes to represent that they would be the beneficiaries' new nurses and to enroll the beneficiaries with Perpetual and Legacy.

9.     It was further part of the conspiracy that JOHN GABRIEL enrolled, and caused Perpetual and Legacy to enroll, patients of other home health care agencies, without the knowledge and consent of those patients and home health care agencies.

### B. Paying Bribes and Kickbacks

10.     It was further part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, LUBATON, and REYES paid, and authorized Perpetual and Legacy to pay, various sums of money, in amounts ranging from about $200-$800, to Perpetual and Legacy employees and to others, including medical professionals such as GONZALES, for each patient they referred

11

and caused to be enrolled at Perpetual and Legacy.

11.     It was further part of the conspiracy that JASSY GABRIEL and LUBATON made payments, and caused payments to be made, to GONZALES's wife in exchange for GONZALES's referral of patients to Perpetual.

### C. Falsifying Patient Data and Records

12.     It was further part of the conspiracy that JOHN GABRIEL instructed data entry employees, including DAVIS, GALANG, and PACIS, to enter false patient data into Perpetual's and Legacy's computer databases, including false patient diagnoses and medical conditions, based on information that he (JOHN GABRIEL) provided, not based on actual clinical data from medical professionals.  At JOHN GABRIEL's direction, data entry employees, including DAVIS, GALANG, and PACIS, systematically entered the same false diagnoses, including arthropathy (joint disease), late effect cerebrovascular accident (effects of a stroke), hypertension, and low vision, to enable Perpetual and Legacy to claim a higher level of reimbursement from Medicare. DAVIS, GALANG, PACIS, and others entered such false data into Perpetual's and Legacy's computer databases, knowing that such data was not based on the patients' actual medical conditions and diagnoses, and knowing that it was instead based on information provided by JOHN GABRIEL for the purpose of generating the highest level of reimbursement from Medicare.

13.     It was further part of the conspiracy that JOHN GABRIEL created one-page checklists (at times referred to by Perpetual and Legacy employees as "MO sheets" or "cheat

12

sheets") to assist data entry employees, including DAVIS, GALANG, and PACIS, to enter false patient data into the computer databases more quickly. The cheat sheets listed code numbers associated with the patient medical conditions that JOHN GABRIEL wanted Perpetual and Legacy to use for purposes of billing Medicare, regardless of the patients' actual medical conditions. JOHN GABRIEL directed data entry employees, including DAVIS, GALANG, and PACIS, to enter the data from the cheat sheets into the companies' computer databases before any physician had ordered home health services for the patients and before the patients were seen and assessed by any nurses from Perpetual or Legacy. JOHN GABRIEL also instructed data entry employees to enter false dates of nurse visits so that Perpetual and Legacy could immediately bill Medicare for services that had not been provided by Perpetual or Legacy. DAVIS, GALANG, PACIS, and others followed JOHN GABRIEL's instructions, knowing that their false data would be used to fraudulently bill the Medicare program.

14.     It was further part of the conspiracy that JOHN GABRIEL trained data entry employees, including DAVIS, GALANG, and PACIS, to fill out cheat sheets themselves.

15.     It was further part of the conspiracy that JOHN GABRIEL directed quality assurance employees, including DAVID, to transfer the false patient data from the cheat sheets to OASIS forms and to place the false and fabricated OASIS forms in patients' medical files at Perpetual and Legacy. DAVID and other quality assurance employees followed GABRIEL's instructions, using cheat sheets and information provided by

13

GABRIEL and data entry employees to fill out portions of OASIS forms falsely. Among the false information that they placed onto OASIS forms were false patient diagnoses, assessments of patient daily living skills, and dates of alleged nurse visits. DAVID and other quality assurance employees filled out portions of OASIS forms knowing that such forms should have been completed by nurses at the time of their visits with patients and that the information set forth on the forms should have been based on comprehensive clinical assessments of the patients' actual medical conditions, not information provided by GABRIEL and data entry employees. At times, JOHN GABRIEL completed OASIS forms himself, without any medical basis or nurse's assessment to support the information that he placed on the forms.

16.     It was further part of the conspiracy that JOHN GABRIEL instructed Perpetual and Legacy nurses not to fill out certain portions of OASIS forms. More specifically, JOHN GABRIEL instructed nurses not to fill out those portions of the OASIS forms which required them to list the date of the patient visit, the patient's diagnosis, and the patient's ability to do certain basic daily living activities. JOHN GABRIEL gave those instructions so that he, DAVID, and other members of his administrative staff could fill in those portions of the OASIS forms falsely, in such a way that the forms would support fraudulent Medicare claims, that is, claims designed to maximize the amount of the reimbursement that Perpetual and Legacy could claim from Medicare, without regard to patients' actual medical conditions.

14

17.     It was further part of the conspiracy that if nurses contradicted JOHN GABRIEL's instructions by completely filling out OASIS forms, JOHN GABRIEL and his administrative staff, including DAVID, would subsequently alter the OASIS forms prepared by the nurses. DAVID and others would alter the nurses' OASIS forms by removing entire sections that had been filled out by the nurses, discarding those pages, and replacing the discarded pages with new pages filled out in accord with the false cheat sheets, all so that the OASIS forms would reflect more severe patient diagnoses and more services rendered to the patients, thereby enabling Perpetual and Legacy to falsely claim a higher level of reimbursement from Medicare.

18.     It was further part of the conspiracy that JOHN GABRIEL directed his administrative staff, including DAVIS, GALANG, and PACIS, to create false and fraudulent Forms 485 based in part on the false data set forth on the cheat sheets.

19.     It was further part of the conspiracy that JOHN GABRIEL's administrative personnel submitted false and fraudulent Forms 485 to certain physicians, including DELA TORRE and GONZALES, to sign and falsely certify that the patients identified on the forms had all of the medical conditions and diagnoses that they (GABRIEL and his administrative staff) set forth on the forms.

20.     It was further part of the conspiracy that DELA TORRE and GONZALES knowingly signed false Forms 485, falsely certifying that certain patients had certain medical conditions, such as senile dementia, late effect cerebrovascular disease, and low vision, when

15

in fact such patients did not have such medical conditions. DELA TORRE and GONZALES signed the false Forms 485 with knowledge that they would be used to support false and fraudulent Medicare claims.

21.    It was further part of the conspiracy that JASSY GABRIEL and LUBATON made payments to GONZALES in connection with his authorization of home health services for Perpetual patients. JASSY GABRIEL and LUBATON made those payments to GONZALES indirectly, with checks written on Perpetual's account payable to GONZALES's wife, and caused those payments to be mischaracterized in Perpetual's accounting records as "contract labor-consulting," "marketing," and "advertisement" expenses, when in fact neither GONZALES nor his wife were employees, contractors, marketers, or advertisers for Perpetual.

22.    It was further part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, LUBATON, and REYES directed and authorized a company bookkeeper ("Bookkeeper A.R.") to make payments to DELA TORRE so that DELA TORRE would sign false and fraudulent Forms 485 for Perpetual and Legacy on a regular basis. Bookkeeper A.R. followed their instructions and issued checks on Perpetual and Legacy bank accounts and made those checks payable to himself. JASSY GABRIEL, LUBATON, and REYES signed those checks, after which Bookkeeper A.R. cashed the checks and then gave the cash to DELA TORRE or deposited the cash directly into DELA TORRE's bank account. At the direction of JOHN GABRIEL, JASSY GABRIEL, LUBATON, and REYES, Bookkeeper

16

A.R. paid DELA TORRE thousands of dollars in cash under the table, as often as every two weeks, so that DELA TORRE would continuously make herself available to sign Forms 485 for Perpetual and Legacy.

23.     It was further part of the conspiracy that JOHN GABRIEL and others at Perpetual forged physicians' signatures on Forms 485, thereby falsely certifying that the patients were under the care of a physician, that they qualified for home health services, and that they had authentic plans of care.

### D. Fraudulent Medicare Billing

24.     It was further part of the conspiracy that JOHN GABRIEL and his co-conspirators caused Perpetual and Legacy to submit Medicare claims to Palmetto GBA, seeking reimbursement for home health care services allegedly provided to Medicare beneficiaries, when in fact, as they knew, the beneficiaries had not been seen by nurses from Perpetual or Legacy.

25.     It was further part of the conspiracy that JOHN GABRIEL and his co-conspirators caused Perpetual and Legacy to submit Medicare claims to Palmetto GBA, seeking reimbursement for home health care services allegedly provided to Medicare beneficiaries, when in fact, as they knew, the beneficiaries were not under the care of a physician who had authorized home health care services.

26.     It was further part of the conspiracy that JOHN GABRIEL and his co-conspirators caused Perpetual and Legacy to submit Medicare claims to Palmetto GBA,

17

seeking reimbursement for home health care services allegedly provided to Medicare beneficiaries, when in fact, as they knew, no services had been provided by Perpetual or Legacy.

27.   It was further part of the conspiracy that JOHN GABRIEL and his co-conspirators caused Perpetual and Legacy to submit Medicare claims to Palmetto GBA, seeking reimbursement for home health care services allegedly provided to Medicare beneficiaries, when in fact, as they knew, the beneficiaries were not homebound, did not need home health services, and had been intentionally misdiagnosed by them in order to claim a higher rate of reimbursement.

28.   It was further part of the conspiracy that JOHN GABRIEL and his co-conspirators caused Perpetual and Legacy to submit Medicare claims to Palmetto GBA, seeking reimbursement for home health care services furnished as a result of illegal financial relationships with physicians, illegal referrals, bribes, and kickback payments.

29.   It was further part of the conspiracy that JOHN GABRIEL and his co-conspirators caused Palmetto GBA to reimburse Perpetual and Legacy for false and fraudulent claims via direct deposit of Medicare funds into the bank accounts of Perpetual and Legacy at JP Morgan Chase Bank.

### E.  Use of Fraud Proceeds

30.   It was further part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, LUBATON, and REYES obtained proceeds of false and fraudulent Medicare claims by

18

withdrawing money from the bank accounts of Perpetual and Legacy.

31.     It was further part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, LUBATON, DELA TORRE, and their co-conspirators used proceeds of the conspiracy to pay their personal expenses, to gamble at casinos in the Chicago area and Las Vegas, and to acquire assets, including vehicles, real estate in the United States and the Philippines, and jewelry.

32.     It was further part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, LUBATON, and REYES used proceeds of the conspiracy to pay salaries of Perpetual and Legacy employees in order to continue the scheme.

33.     It was further part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, LUBATON, and REYES used proceeds of the conspiracy to pay bribes and kickbacks to others in exchange for referrals of patients.

### F. Concealment of the Conspiracy

34.     It was further part of the conspiracy that JOHN GABRIEL, JASSY GABRIEL, LUBATON, REYES, DELA TORRE, GONZALES, and their co-conspirators concealed the existence of the conspiracy, the purposes of the conspiracy, and the acts done in furtherance of the conspiracy, by the following means, among others:

a.     failing to completely and accurately document patient visits and results of clinical assessments;

b.     failing to maintain authentic medical records of patient visits and

19

assessments;

    c.    creating false patient data and medical records to support false and fraudulent Medicare claims;

    d.    paying physicians, indirectly through third parties, in exchange for referring patients and signing Forms 485; and

    e.    diverting fraud proceeds to the organizer and leader of the conspiracy, JOHN GABRIEL, with checks payable to shell companies, namely, "MR Enterprises" and "Blue Cross Consulting, LLC," and to ghost employees, namely, "L.M.," "J.M.," "D.T.," and "E.K.," who were friends and associates of JOHN GABRIEL.

### Losses Incurred by Medicare

35.    During the course of the conspiracy, JOHN GABRIEL, JASSY GABRIEL, LUBATON, REYES, DELA TORRE, GONZALES, DAVIS, PACIS, GALANG, DAVID, and their co-conspirators knowingly caused Perpetual and Legacy to submit thousands of false and fraudulent claims to Palmetto GBA, claiming millions of dollars in Medicare funds to which they were not entitled. Palmetto GBA paid those false and fraudulent claims, unaware that the claims sought reimbursement for services that had not been provided, were not medically necessary, were based on false medical diagnoses and conditions, and were furnished as a result of illegal financial relationships with physicians, illegal referrals, bribes, and kickback payments.

36.    As a result of the false and fraudulent claims that JOHN GABRIEL, JASSY

20

GABRIEL, LUBATON, REYES, DELA TORRE, GONZALES, DAVIS, PACIS, GALANG, DAVID, and their co-conspirators submitted and caused to be submitted to Palmetto GBA, Medicare incurred losses in an amount totaling at least $20,000,000;

All in violation of Title 18, United States Code, Section 1349.

21

## COUNTS TWO THROUGH FIVE
### (Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.    Paragraph 1 of Count One of this superseding indictment is realleged and incorporated as though fully set forth herein.

2.    Beginning in or about 2006 and continuing through about January 2011, at Chicago and Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

> JACINTO "JOHN" GABRIEL, JR.,
> STELLA LUBATON,
> NESSLI REYES,
> CHARITO DELA TORRE, and
> RICARDO GONZALES,

defendants herein, together with others known and unknown to the Grand Jury (referred to collectively as "co-schemers"), knowingly participated in a scheme to defraud a health care benefit program affecting commerce, namely, the Medicare program, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, the Medicare program, in connection with the delivery of and payment for health care benefits, items, and services.

3.    It was part of the scheme that JOHN GABRIEL and his co-schemers obtained personal background information of Medicare beneficiaries to be used to fraudulently bill Medicare without the beneficiaries' knowledge or consent.

4.    It was further part of the scheme that JOHN GABRIEL, LUBATON, REYES, and their co-schemers paid bribes and kickbacks, in cash and by check, directly and

indirectly, to medical professionals, including GONZALES, and to others in exchange for referrals of patients to Perpetual and Legacy.

5.     It was further part of the scheme that JOHN GABRIEL, LUBATON, DELA TORRE, GONZALES, and their co-schemers falsified patient data and records, and caused patient data and records to be falsified, including OASIS forms and Forms 485, to support false and fraudulent Medicare claims.

6.     It was further part of the scheme that JOHN GABRIEL, LUBATON, REYES, DELA TORRE, GONZALES, and their co-schemers submitted Medicare claims to Palmetto GBA, and caused Medicare claims to be submitted to Palmetto GBA, seeking reimbursement for home health care services that were not provided, were not medically necessary, were based on false medical diagnoses and conditions, and were rendered as a result of illegal financial relationships, illegal referrals, bribes, and kickback payments.

7.     It was further part of the scheme that JOHN GABRIEL, LUBATON, and REYES used proceeds of fraudulent Medicare claims to pay themselves, their co-schemers, co-employees, and others who provided assistance in carrying out the scheme, including DELA TORRE and GONZALES.

8.     It was further part of the scheme that JOHN GABRIEL, LUBATON, REYES, and their co-schemers concealed the existence of the scheme and the distribution of the proceeds of the scheme, including by using shell companies and ghost employees to divert money from Perpetual to JOHN GABRIEL and paying physicians indirectly through third

parties.

9.     As a result of the false and fraudulent claims that JOHN GABRIEL, LUBATON, REYES, DELA TORRE, GONZALES, and their co-schemers submitted and caused to be submitted to Palmetto GBA, Medicare incurred millions of dollars in losses.

## Execution of the Scheme

10.     On or about the dates set forth below, each such date constituting a separate count of this superseding indictment, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

JACINTO "JOHN" GABRIEL, JR.,

defendant herein, knowingly and willfully executed and attempted to execute the scheme by causing Perpetual to submit false and fraudulent Medicare claims to Palmetto GBA, which claims sought reimbursement in the following approximate amounts for home health care services allegedly provided to the following Medicare beneficiaries:

| Count | Beneficiary | Date of Claim Submission | Dates of Claimed Services | Amount |
|-------|-------------|--------------------------|---------------------------|--------|
| Two | A.B. | October 16, 2009 | July 17, 2009–August 15, 2009 | $1,305 |
| Three | R.S. | March 12, 2010 | December 21, 2009–February 9, 2010 | $2,586 |
| Four | P.A. | June 14, 2010 | March 6, 2010–April 30, 2010 | $1,160 |
| Five | L.T. | October 18, 2010 | September 13, 2010–October 15, 2010 | $2,586 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS SIX THROUGH ELEVEN
### (Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     Paragraphs 1 through 9 of Count Two of this superseding indictment are realleged and incorporated as though fully set forth herein.

2.     On or about the dates set forth below, each such date constituting a separate count of this superseding indictment, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

JACINTO "JOHN" GABRIEL, JR. and
CHARITO DELA TORRE,

defendants herein, knowingly and willfully executed and attempted to execute the scheme by causing Perpetual to submit false and fraudulent Medicare claims to Palmetto GBA, which claims sought reimbursement in the following approximate amounts for home health care services allegedly provided to the following Medicare beneficiaries:

| Count | Beneficiary | Date of Claim Submission | Dates of Claimed Services | Amount |
|-------|-------------|--------------------------|---------------------------|--------|
| Six | R.M. | March 29, 2007 | January 22, 2007–March 2, 2007 | $2,555 |
| Seven | R.M. | May 11, 2010 | March 11, 2010–May 3, 2010 | $2,892 |
| Eight | C.F. | April 13, 2010 | February 9, 2010–April 9, 2010 | $2,892 |
| Nine | C.F. | June 8, 2010 | April 10, 2010–June 2, 2010 | $2,892 |
| Ten | V.C. | May 18, 2010 | March 16, 2010–May 14, 2010 | $2,892 |
| Eleven | V.C. | June 10, 2010 | January 15, 2010–February 22, 2010 | $1,735 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS TWELVE THROUGH EIGHTEEN
### (Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.    Paragraphs 1 through 9 of Count Two of this superseding indictment are realleged and incorporated as though fully set forth herein.

2.    On or about the dates set forth below, each such date constituting a separate count of this superseding indictment, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

JACINTO "JOHN" GABRIEL, JR. and
RICARDO GONZALES,

defendants herein, knowingly and willfully executed and attempted to execute the scheme by causing Perpetual to submit false and fraudulent Medicare claims to Palmetto GBA, which claims sought reimbursement in the following approximate amounts for home health care services allegedly provided to the following Medicare beneficiaries:

| Count | Beneficiary | Date of Claim Submission | Dates of Claimed Services | Amount |
|---|---|---|---|---|
| Twelve | C.F. | August 11, 2009 | June 7, 2009–August 5, 2009 | $2,825 |
| Thirteen | D.E. | August 3, 2010 | April 27, 2010–June 25, 2010 | $2,892 |
| Fourteen | D.E. | August 26, 2010 | June 26, 2010–August 24, 2010 | $2,929 |
| Fifteen | D.E. | October 25, 2010 | August 25, 2010–October 14, 2010 | $2,892 |

| Sixteen | D.E. | December 30, 2010 | October 29, 2010–December 27, 2010 | $2,914 |
| Seventeen | E.A. | October 19, 2010 | August 16, 2010–October 14, 2010 | $2,586 |
| Eighteen | E.A. | December 16, 2010 | October 15, 2010–December 13, 2010 | $2,586 |

In violation of Title 18, United States Code, Sections 1347 and 2.

28

## COUNTS NINETEEN AND TWENTY
### (Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     Paragraphs 1 through 9 of Count Two of this superseding indictment are realleged and incorporated as though fully set forth herein.

2.     On or about the dates set forth below, each such date constituting a separate count of this superseding indictment, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

JACINTO "JOHN" GABRIEL, JR. and
STELLA LUBATON,

defendants herein, knowingly and willfully executed and attempted to execute the scheme by issuing checks, and causing Perpetual to issue checks, in the following amounts, payable to the following payees:

| Count | Date | Payee | Check No. | Amount |
|-------|------|-------|-----------|--------|
| Nineteen | August 27, 2010 | J.M. | 113423 | $5,000 |
| Twenty | September 29, 2010 | Blue Cross Consulting, LLC | 114008 | $5,000 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS TWENTY-ONE THROUGH TWENTY-SIX
### (Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     Paragraphs 1 through 9 of Count Two of this superseding indictment are realleged and incorporated as though fully set forth herein.

2.     On or about the dates set forth below, each such date constituting a separate count of this superseding indictment, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JACINTO "JOHN" GABRIEL, JR. and
NESSLI REYES,

defendants herein, knowingly and willfully executed and attempted to execute the scheme by issuing checks, and causing Legacy to issue checks, in the following amounts, payable to the following payees:

| Count | Date | Payee | Check No. | Amount |
|---|---|---|---|---|
| Twenty-One | July 29, 2010 | L.M. | 3222 | $6,000 |
| Twenty-Two | July 30, 2010 | Blue Cross Consulting | 3204 | $5,000 |
| Twenty-Three | July 30, 2010 | D.T. | 3205 | $5,000 |
| Twenty-Four | July 30, 2010 | J.M. | 3206 | $5,000 |
| Twenty-Five | July 30, 2010 | E.K. | 3210 | $2,958 |
| Twenty-Six | August 4, 2010 | Mr. Enterprise | 3236 | $9,000 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS TWENTY-SEVEN AND TWENTY-EIGHT
### (Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.    Paragraphs 1 through 9 of Count Two of this superseding indictment are realleged and incorporated as though fully set forth herein.

2.    On or about the dates set forth below, each such date constituting a separate count of this superseding indictment, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

> JACINTO "JOHN" GABRIEL, JR.,
> STELLA LUBATON, and
> CHARITO DELA TORRE,

defendants herein, knowingly and willfully executed and attempted to execute the scheme by causing Perpetual's bookkeeper ("Bookkeeper A.R.") to issue checks on Perpetual's bank account, payable to himself, in the following approximate amounts:

| Count | Date | Check No. | Amount |
|---|---|---|---|
| Twenty-Seven | August 4, 2010 | 112970 | $2,835 |
| Twenty-Eight | August 18, 2010 | 113224 | $2,835 |

In violation of Title 18, United States Code, Sections 1347 and 2.

31

## COUNT TWENTY-NINE
### (Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.    Paragraphs 1 through 9 of Count Two of this superseding indictment are realleged and incorporated as though fully set forth herein.

2.    On or about May 17, 2010, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

JACINTO "JOHN" GABRIEL, JR. and
CHARITO DELA TORRE,

defendants herein, knowingly and willfully executed and attempted to execute the scheme by causing Perpetual to issue a check payable to DELA TORRE's daughter (check number 111996) in the amount of $2,300;

In violation of Title 18, United States Code, Sections 1347 and 2.

32

## COUNTS THIRTY THROUGH THIRTY-TWO
### (Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.      Paragraphs 1 through 9 of Count Two of this superseding indictment are realleged and incorporated as though fully set forth herein.

2.      On or about the dates set forth below, each such date constituting a separate count of this superseding indictment, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> JACINTO "JOHN" GABRIEL, JR.,
> NESSLI REYES, and
> CHARITO DELA TORRE,

defendants herein, knowingly and willfully executed and attempted to execute the scheme by causing Legacy's bookkeeper ("Bookkeeper A.R.") to issue checks on Legacy's bank account, payable to himself, in the following amounts:

| Count | Date | Check No. | Amount |
|---|---|---|---|
| Thirty | September 10, 2010 | 3417 | $1,950 |
| Thirty-One | September 24, 2010 | 3485 | $1,950 |
| Thirty-Two | January 14, 2011 | 4047 | $1,950 |

In violation of Title 18, United States Code, Sections 1347 and 2.

33

## COUNTS THIRTY-THREE THROUGH FORTY-FOUR
### (Health Care Fraud)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     Paragraphs 1 through 9 of Count Two of this superseding indictment are realleged and incorporated as though fully set forth herein.

2.     On or about the dates set forth below, each such date constituting a separate count of this superseding indictment, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

JACINTO "JOHN" GABRIEL, JR.,
STELLA LUBATON, and
RICARDO GONZALES,

defendants herein, knowingly and willfully executed and attempted to execute the scheme by issuing checks, and causing Perpetual to issue checks, payable to GONZALES's wife in the following amounts:

| Count | Date | Check No. | Amount |
|---|---|---|---|
| Thirty-Three | July 28, 2009 | 108095 | $800 |
| Thirty-Four | October 2, 2009 | 108761 | $500 |
| Thirty-Five | October 26, 2009 | 108934 | $700 |
| Thirty-Six | October 26, 2009 | 108935 | $500 |
| Thirty-Seven | November 25, 2009 | 109321 | $500 |
| Thirty-Eight | January 12, 2010 | 109986 | $1,000 |
| Thirty-Nine | May 28, 2010 | 111998 | $1,500 |
| Forty | June 25, 2010 | 112454 | $855 |

34

| | | | |
|---|---|---|---|
| Forty-One | August 6, 2010 | 112996 | $1,050 |
| Forty-Two | September 17, 2010 | 113758 | $850 |
| Forty-Three | October 15, 2010 | 114176 | $500 |
| Forty-Four | November 26, 2010 | 114902 | $850 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT FORTY-FIVE
### (Payment of Illegal Remuneration)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     At times material to Count Forty-Five of this superseding indictment:

a.     Defendant STELLA LUBATON was a corporate officer, administrator, and shareholder of Perpetual Home Health, Inc. ("Perpetual"), a home health care company located in the Northern District of Illinois.

b.     Rosalie Gonzales was a registered nurse licensed by the State of Illinois and employed by a hospital in Chicago, Illinois.

2.     On or about September 14, 2009, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

STELLA LUBATON,

defendant herein, knowingly and willfully offered and paid remuneration, that is, a kickback and bribe in the form of $500 in cash, to Gonzales to induce her to refer an individual to Perpetual for the furnishing and arranging for the furnishing of an item and service, in particular, home health services, for which payment may be made in whole and in part under Medicare, a Federal health care program;

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

36

## COUNT FORTY-SIX
### (Receipt of Illegal Remuneration)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     At times material to Count Forty-Six of this superseding indictment:

a.     Perpetual Home Health, Inc. ("Perpetual") was a home health care company located in the Northern District of Illinois.

b.     Defendant ROSALIE GONZALES was a registered nurse licensed by the State of Illinois and employed by a hospital in Chicago, Illinois.

2.     On or about September 14, 2009, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROSALIE GONZALES,

defendant herein, knowingly and willfully solicited and received remuneration, that is, a kickback and bribe in the form of $500 in cash, in return for referring an individual to Perpetual for the furnishing and arranging for the furnishing of an item and service, in particular, home health services, for which payment may be made in whole and in part under Medicare, a Federal health care program;

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

37

## COUNT FORTY-SEVEN
**(Receipt of Illegal Remuneration)**

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     At times relevant to Count Forty-Seven of this superseding indictment:

a.     Perpetual Home Health, Inc. ("Perpetual") was a home health care company located in the Northern District of Illinois.

b.     Defendant RICARDO GONZALES was a physician licensed to practice medicine in the State of Illinois.

2.     On or about October 26, 2009, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO GONZALES,

defendant herein, knowingly and willfully solicited and received remuneration indirectly, that is, a kickback and bribe in the form of a $500 check written on Perpetual's bank account (check number 108935) payable to GONZALES's wife, in return for referring an individual to Perpetual for the furnishing and arranging for the furnishing of an item and service, in particular, home health services, for which payment may be made in whole and in part under Medicare, a Federal health care program;

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

38

## COUNTS FORTY-EIGHT THROUGH FIFTY-EIGHT
### (Money Laundering)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.      At times material to Counts Forty-Eight through Fifty-Eight of this superseding indictment:

        a.      Perpetual Home Health, Inc. ("Perpetual") was a home health care company located in the Northern District of Illinois.

        b.      Defendant JACINTO "JOHN" GABRIEL, JR. caused Perpetual to issue checks payable to shell companies, namely, "MR Enterprises" and "Blue Cross Consulting, LLC."

        c.      Howard-Western Currency Exchange, 7537 North Western Avenue, Chicago, Illinois, was a financial institution which was engaged in, and the activities of which affected, interstate commerce.

        d.      Under federal law, financial institutions were required to file a currency transaction report with the U.S. Department of the Treasury for every customer transaction involving more than $10,000 in currency.

2.      On or about the dates set forth below, each such date constituting a separate count of this superseding indictment, at Chicago, in the Northern District of Illinois, Eastern Division,

                        JACINTO "JOHN" GABRIEL, JR.,

defendant herein, knowing that the property involved in a financial transaction represented

39

the proceeds of some form of unlawful activity, conducted such a financial transaction which in fact involved the proceeds of specified unlawful activity, namely, the health care fraud conspiracy described in Count One of this superseding indictment, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under Federal law. More specifically, JOHN GABRIEL cashed checks in the following amounts on the following dates at Howard-Western Currency Exchange, which checks were written on the account of Perpetual and made payable to "MR Enterprises" and "Blue Cross Consulting, LLC," in amounts under $10,000, all to avoid a Federal currency transaction reporting requirement:

| Count | Date | Payee | Check No. | Amount |
|-------|------|-------|-----------|--------|
| Forty-Eight | October 28, 2010 | MR Enterprises | 114418 | $9,000 |
| Forty-Nine | October 28, 2010 | MR Enterprises | 114423 | $9,000 |
| Fifty | November 17, 2010 | MR Enterprises | 114782 | $9,000 |
| Fifty-One | November 19, 2010 | MR Enterprises | 114783 | $9,000 |
| Fifty-Two | November 19, 2010 | Blue Cross Consulting, LLC | 114526 | $5,000 |
| Fifty-Three | December 15, 2010 | MR Enterprises | 115257 | $9,000 |
| Fifty-Four | December 15, 2010 | MR Enterprises | 115258 | $9,000 |
| Fifty-Five | December 30, 2010 | MR Enterprises | 115504 | $9,000 |

| Fifty-Six | December 30, 2010 | MR Enterprises | 115505 | $9,000 |
|---|---|---|---|---|
| Fifty-Seven | December 30, 2010 | MR Enterprises | 115506 | $9,000 |
| Fifty-Eight | December 30, 2010 | Blue Cross Consulting, LLC | 115518 | $5,000 |

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

## COUNT FIFTY-NINE
### (Tax Evasion)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     At times material to Count Fifty-Nine of this superseding indictment:

a.     Perpetual Home Health, Inc. ("Perpetual") was a home health care company located in the Northern District of Illinois.

b.     Jassy Gabriel was the nominal majority shareholder of Perpetual.

c.     James Davis was a data entry employee at Perpetual.

d.     Kennedy Lomillo and Bookkeeper A.R. provided bookkeeping and payroll services to Perpetual.

2.     JOHN GABRIEL received, in calendar year 2006, gross income of at least $276,500.  By reason of that income, JOHN GABRIEL was required by law, following the close of calendar year 2006 and on or before April 17, 2007, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.  Based on the income received by JOHN GABRIEL in calendar year 2006, he owed income tax to the United States in the total amount of at least $78,536.

3.     During calendar year 2006, and continuing through about January 2011, at Chicago and Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

### JACINTO "JOHN" GABRIEL, JR.,

defendant herein, a resident of Chicago, Illinois, willfully attempted to evade and defeat at least $78,536 in income tax due and owing by him to the United States, and the payment

thereof, for calendar year 2006, by the following affirmative acts, among others:

      a.     using Jassy Gabriel as a nominee owner of Perpetual to conceal his (JOHN GABRIEL's) interests in the company;

      b.     directing Jassy Gabriel and James Davis to purchase property and vehicles for his (JOHN GABRIEL's) use and benefit and to place title to the property and vehicles in their names or in the name of Perpetual;

      c.     directing Jassy Gabriel and Perpetual's bookkeepers (Lomillo and Bookkeeper A.R.) to issue checks on Perpetual's account payable to friends and associates of his (JOHN GABRIEL's) and then directing his friends and associates to cash the checks and to provide the cash to him;

      d.     directing Jassy Gabriel and Bookkeeper A.R. to issue checks on Perpetual's account payable to shell companies, namely, "MR Enterprises" and "Blue Cross Consulting, LLC," and then cashing the checks or giving the checks to associates of his to cash or to deposit for his (JOHN GABRIEL's) later use and benefit;

      e.     directing Jassy Gabriel, Lomillo, and Bookkeeper A.R. to issue checks on Perpetual's account to pay certain personal expenses of his (JOHN GABRIEL's), including his monthly rent, vehicle and property loans, and a jeweler from whom he purchased jewelry;

      f.     paying other personal expenses with cash;

      g.     not opening any bank accounts in his name or using banks to conduct

personal financial transactions;

        h.     not filing an income tax return with the Internal Revenue Service and thereby failing to report gross income of at least $276,500 for calendar year 2006; and

        i.     not paying at least $78,536 in federal income taxes due and owing on his total income for calendar year 2006;

        In violation of Title 26, United States Code, Section 7201.

**COUNT SIXTY**
**(Tax Evasion)**

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     At times material to Count Sixty of this superseding indictment:

       a.     Perpetual Home Health, Inc. ("Perpetual") was a home health care company located in the Northern District of Illinois.

       b.     Jassy Gabriel was the nominal majority shareholder of Perpetual.

       c.     James Davis was a data entry employee at Perpetual.

       d.     Kennedy Lomillo and Bookkeeper A.R. provided bookkeeping and payroll services to Perpetual.

2.     JOHN GABRIEL received, in calendar year 2007, gross income of at least $1,362,823. By reason of that income, JOHN GABRIEL was required by law, following the close of calendar year 2007 and on or before April 15, 2008, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon. Based on the income received by JOHN GABRIEL in calendar year 2007, he owed income tax to the United States in the total amount of at least $414,651.

3.     During calendar year 2007, and continuing through about January 2011, at Chicago and Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

JACINTO "JOHN" GABRIEL, JR.,

defendant herein, a resident of Chicago, Illinois, willfully attempted to evade and defeat at least $414,651 in income tax due and owing by him to the United States, and the payment

45

thereof, for calendar year 2007, by the following affirmative acts, among others:

      a.     using Jassy Gabriel as a nominee owner of Perpetual to conceal his (JOHN GABRIEL's) interests in the company;

      b.     directing Jassy Gabriel and James Davis to purchase property and vehicles for his (JOHN GABRIEL's) use and benefit and to place title to the property and vehicles in their names or in the name of Perpetual;

      c.     directing Jassy Gabriel, Lomillo, and Bookkeeper A.R. to issue checks on Perpetual's account payable to friends and associates of his (JOHN GABRIEL's) and then directing his friends and associates to cash the checks and to provide the cash to him;

      d.     directing Jassy Gabriel and Bookkeeper A.R. to issue checks on Perpetual's account payable to shell companies, namely, "MR Enterprises" and "Blue Cross Consulting, LLC," and then cashing the checks or giving the checks to associates of his to cash or to deposit for his (JOHN GABRIEL's) later use and benefit;

      e.     directing Jassy Gabriel, Lomillo, and Bookkeeper A.R. to issue checks on Perpetual's account to pay certain personal expenses of his (JOHN GABRIEL's), including his monthly rent, vehicle and property loans, and a jeweler from whom he purchased jewelry;

      f.     paying other personal expenses with cash;

      g.     not opening any bank accounts in his name or using banks to conduct personal financial transactions;

h.     not filing an income tax return with the Internal Revenue Service and thereby failing to report gross income of at least $1,362,823 for calendar year 2007; and

i.     not paying at least $414,651 in federal income taxes due and owing on his total income for calendar year 2007;

In violation of Title 26, United States Code, Section 7201.

## COUNT SIXTY-ONE
### (Tax Evasion)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.     At times material to Count Sixty-One of this superseding indictment:

a.     Perpetual Home Health, Inc. ("Perpetual") was a home health care company located in the Northern District of Illinois.

b.     Jassy Gabriel was the nominal majority shareholder of Perpetual.

c.     James Davis was a data entry employee at Perpetual.

d.     Bookkeeper A.R. provided bookkeeping and payroll services to Perpetual.

2.     JOHN GABRIEL received, in calendar year 2008, gross income of at least $522,375. By reason of that income, JOHN GABRIEL was required by law, following the close of calendar year 2008 and on or before April 15, 2009, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon. Based on the income received by JOHN GABRIEL in calendar year 2008, he owed income tax to the United States in the total amount of at least $153,849.

3.     During calendar year 2008, and continuing through about January 2011, at Chicago and Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

JACINTO "JOHN" GABRIEL, JR.,

defendant herein, a resident of Chicago, Illinois, willfully attempted to evade and defeat at least $153,849 in income tax due and owing by him to the United States, and the payment

thereof, for calendar year 2008, by the following affirmative acts, among others:

      a.     using Jassy Gabriel as a nominee owner of Perpetual to conceal his (JOHN GABRIEL's) interests in the company;

      b.     directing Jassy Gabriel and James Davis to purchase property and vehicles for his (JOHN GABRIEL's) use and benefit and to place title to the property and vehicles in their names or in the name of Perpetual;

      c.     directing Jassy Gabriel and Bookkeeper A.R. to issue checks on Perpetual's account payable to friends and associates of his (JOHN GABRIEL's) and then directing his friends and associates to cash the checks and to provide the cash to him;

      d.     directing Jassy Gabriel and Bookkeeper A.R. to issue checks on Perpetual's account payable to shell companies, namely, "MR Enterprises" and "Blue Cross Consulting, LLC," and then cashing the checks or giving the checks to associates of his to cash or to deposit for his (JOHN GABRIEL's) later use and benefit;

      e.     directing Jassy Gabriel and Bookkeeper A.R. to issue checks on Perpetual's account to pay certain personal expenses of his (JOHN GABRIEL's), including his monthly rent, vehicle and property loans, and a jeweler from whom he purchased jewelry;

      f.     paying other personal expenses with cash;

      g.     not opening any bank accounts in his name or using banks to conduct personal financial transactions;

      h.     not filing an income tax return with the Internal Revenue Service and

thereby failing to report gross income of at least $522,375 for calendar year 2008; and

    i.  not paying at least $153,849 in federal income taxes due and owing on his total income for calendar year 2008;

  In violation of Title 26, United States Code, Section 7201.

## COUNT SIXTY-TWO
### (Tax Evasion)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.      At times material to Count Sixty-Two of this superseding indictment:

        a.      Perpetual Home Health, Inc. ("Perpetual") was a home health care company located in the Northern District of Illinois.

        b.      Jassy Gabriel was the nominal majority shareholder of Perpetual.

        c.      James Davis was a data entry employee at Perpetual.

        d.      Bookkeeper A.R. provided bookkeeping and payroll services to Perpetual.

2.      JOHN GABRIEL received, in calendar year 2009, gross income of at least $664,903. By reason of that income, JOHN GABRIEL was required by law, following the close of calendar year 2009 and on or before April 15, 2010, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon. Based on the income received by JOHN GABRIEL in calendar year 2009, he owed income tax to the United States in the total amount of at least $242,026.

3.      During calendar year 2009, and continuing through about January 2011, at Chicago and Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere,

                        JACINTO "JOHN" GABRIEL, JR.,

defendant herein, a resident of Chicago, Illinois, willfully attempted to evade and defeat at least $242,026 in income tax due and owing by him to the United States, and the payment

51

thereof, for calendar year 2009, by the following affirmative acts, among others:

      a.     using Jassy Gabriel as a nominee owner of Perpetual to conceal his (JOHN GABRIEL's) interests in the company;

      b.     directing Jassy Gabriel and James Davis to purchase vehicles for his (JOHN GABRIEL's) use and benefit and to place title to the vehicles in their names or in the name of Perpetual;

      c.     directing Jassy Gabriel and Bookkeeper A.R. to issue checks on Perpetual's account payable to friends and associates of his (JOHN GABRIEL's) and then directing his friends and associates to cash the checks and to provide the cash to him;

      d.     directing Jassy Gabriel and Bookkeeper A.R. to issue checks on Perpetual's account payable to shell companies, namely, "MR Enterprises" and "Blue Cross Consulting, LLC," and then cashing the checks or giving the checks to associates of his to cash or to deposit for his (JOHN GABRIEL's) later use and benefit;

      e.     directing Jassy Gabriel and Bookkeeper A.R. to issue checks on Perpetual's account to pay certain personal expenses of his (JOHN GABRIEL's), including his monthly rent, vehicle and property loans, and a jeweler from whom he purchased jewelry;

      f.     paying other personal expenses with cash;

      g.     not opening any bank accounts in his name or using banks to conduct personal financial transactions;

      h.     not filing an income tax return with the Internal Revenue Service and

thereby failing to report gross income of at least $664,903 for calendar year 2009; and

      i.    not paying at least $242,026 in federal income taxes due and owing on his total income for calendar year 2009;

In violation of Title 26, United States Code, Section 7201.

## COUNT SIXTY-THREE
### (Tax Evasion)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.    At times material to Count Sixty-Three of this superseding indictment:

a.    Perpetual Home Health, Inc. ("Perpetual") and Legacy Home Healthcare Services ("Legacy") were home health care companies located in the Northern District of Illinois.

b.    Defendant CHARITO DELA TORRE was a physician licensed to practice medicine in the State of Illinois. DELA TORRE received income from Perpetual and Legacy.

2.    DELA TORRE received, in calendar year 2005, gross income of at least $179,994. By reason of that income, DELA TORRE was required by law, following the close of calendar year 2005 and on or before April 17, 2006, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon. Based on the income received by DELA TORRE in calendar year 2005, she owed income tax to the United States in the total amount of at least $52,081.

3.    During calendar year 2005, and continuing until in or about January 2011, at Berwyn, in the Northern District of Illinois, Eastern Division, and elsewhere,

CHARITO DELA TORRE,

defendant herein, a resident of Berwyn, Illinois, willfully attempted to evade and defeat at least $52,081 in income tax due and owing by her to the United States, and the payment

thereof, for calendar year 2005, by the following affirmative acts, among others:

    a.    directing Perpetual and Legacy to pay her in cash and under the table, in exchange for signing patient home health care certification forms (Medicare Forms 485), and thereby concealing her receipt of income from the Internal Revenue Service;

    b.    making a false statement to the Internal Revenue Service on a Form 433-A (Collection Information Statement for Wage Earners and Self-Employed Individuals), which she signed under penalties of perjury on or about August 28, 2008, and in which she stated, among other things, that her living expenses included $3,000 in housing and utilities per month, when in fact, her housing expenses were paid by Perpetual, not by her;

    c.    not filing an income tax return with the Internal Revenue Service until July 3, 2008 and thereby failing to report gross income of at least $179,994 for calendar year 2005 until she filed that tax return on July 3, 2008; and

    d.    not paying at least $52,081 in federal income taxes due and owing on her total income for calendar year 2005;

    In violation of Title 26, United States Code, Section 7201.

**COUNT SIXTY-FOUR**
(Tax Evasion)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.      At times material to Count Sixty-Four of this superseding indictment:

      a.      Perpetual Home Health, Inc. ("Perpetual") and Legacy Home Healthcare Services ("Legacy") were home health care companies located in the Northern District of Illinois.

      b.      Defendant CHARITO DELA TORRE was a physician licensed to practice medicine in the State of Illinois. DELA TORRE received income from Perpetual and Legacy.

2.      DELA TORRE received, in calendar year 2006, gross income of at least $170,000. By reason of that income, DELA TORRE was required by law, following the close of calendar year 2006 and on or before April 17, 2007, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon. Based on the income received by DELA TORRE in calendar year 2006, she owed income tax to the United States in the total amount of at least $45,484.

3.      During calendar year 2006, and continuing until in or about January 2011, at Berwyn, in the Northern District of Illinois, Eastern Division, and elsewhere,

CHARITO DELA TORRE,

defendant herein, a resident of Berwyn, Illinois, willfully attempted to evade and defeat at least $45,484 in income tax due and owing by her to the United States, and the payment

thereof, for calendar year 2006, by the following affirmative acts, among others:

      a.     directing Perpetual and Legacy to pay her in cash and under the table, in exchange for signing patient home health care certification forms (Medicare Forms 485), and thereby concealing her receipt of income from the Internal Revenue Service;

      b.     making a false statement to the Internal Revenue Service on a Form 433-A (Collection Information Statement for Wage Earners and Self-Employed Individuals), which she signed under penalties of perjury on or about August 28, 2008, and in which she stated, among other things, that her living expenses included $3,000 in housing and utilities per month, when in fact, her housing expenses were paid by Perpetual, not by her;

      c.     not filing an income tax return with the Internal Revenue Service until July 3, 2008 and thereby failing to report gross income of at least $170,000 for calendar year 2006 until she filed that tax return on July 3, 2008; and

      d.     not paying at least $45,484 in federal income taxes due and owing on her total income for calendar year 2006;

In violation of Title 26, United States Code, Section 7201.

## COUNT SIXTY-FIVE
### (Tax Evasion)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.      At times material to Count Sixty-Five of this superseding indictment:

a.      Perpetual Home Health, Inc. ("Perpetual") and Legacy Home Healthcare Services ("Legacy") were home health care companies located in the Northern District of Illinois.

b.      Defendant CHARITO DELA TORRE was a physician licensed to practice medicine in the State of Illinois. DELA TORRE received income from Perpetual and Legacy.

2.      DELA TORRE received, in calendar year 2007, gross income of at least $213,104. By reason of that income, DELA TORRE was required by law, following the close of calendar year 2007 and on or before April 15, 2008, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon. Based on the income received by DELA TORRE in calendar year 2007, she owed income tax to the United States in the total amount of at least $60,840.

3.      During calendar year 2007, and continuing until in or about January 2011, at Berwyn, in the Northern District of Illinois, Eastern Division, and elsewhere,

CHARITO DELA TORRE,

defendant herein, a resident of Berwyn, Illinois, willfully attempted to evade and defeat at least $60,840 in income tax due and owing by her to the United States, and the payment

58

thereof, for calendar year 2007, by the following affirmative acts, among others:

      a.     directing Perpetual and Legacy to pay her in cash and under the table, in exchange for signing patient home health care certification forms (Medicare Forms 485), and thereby concealing her receipt of income from the Internal Revenue Service;

      b.     making a false statement to the Internal Revenue Service on a Form 433-A (Collection Information Statement for Wage Earners and Self-Employed Individuals), which she signed under penalties of perjury on or about August 28, 2008, and in which she stated, among other things, that her living expenses included $3,000 in housing and utilities per month, when in fact, her housing expenses were paid by Perpetual, not by her;

      c.     not filing an income tax return with the Internal Revenue Service until July 3, 2008 and thereby failing to report gross income of at least $213,104 for calendar year 2007 until she filed that tax return on July 3, 2008; and

      d.     not paying at least $60,840 in federal income taxes due and owing on her total income for calendar year 2007;

In violation of Title 26, United States Code, Section 7201.

## COUNT SIXTY-SIX
### (Filing a False Tax Return)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.    At times material to Count Sixty-Six of this superseding indictment:

a.    Perpetual Home Health, Inc. ("Perpetual") was an "S corporation" within the meaning of Subchapter S of Chapter 1 of the Internal Revenue Code.

b.    Defendant STELLA LUBATON was a shareholder of Perpetual. As such, LUBATON was required to report her proportional share of Perpetual's income on her individual income tax returns.

2.    On or about May 29, 2008, at Midlothian, in the Northern District of Illinois, Eastern Division, and elsewhere,

STELLA LUBATON,

defendant herein, who during calendar year 2007 was married and was a resident of Midlothian, Illinois, willfully made and subscribed, and caused to be made and subscribed, a joint U.S. Individual Income Tax Return (Form 1040 with schedules and attachments) for calendar year 2007, on behalf of herself and her husband, which tax return was verified by a written declaration that it was made under the penalties of perjury, was filed with the Internal Revenue Service, and which LUBATON did not believe to be true and correct as to every material matter, in that such tax return falsely stated that the income of LUBATON and her husband from S corporations was $174,108 (line 17 and Schedule E) and that their total income was $546,442 (line 22), when in fact, as LUBATON knew and believed, their income

60

from S corporations and their total income during 2007 were substantially greater than those

amounts;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT SIXTY-SEVEN
### (Aiding and Assisting in the Preparation of a False Tax Return)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1. At times material to Count Sixty-Seven of this superseding indictment:

a. Perpetual Home Health, Inc. ("Perpetual") was an "S corporation" within the meaning of Subchapter S of Chapter 1 of the Internal Revenue Code.

b. Stella Lubaton was a shareholder of Perpetual. As such, Lubaton was required to report her proportional share of Perpetual's income on her individual income tax returns.

c. Defendant KENNEDY LOMILLO provided bookkeeping and payroll services to Perpetual. LOMILLO also prepared Perpetual's corporate tax return and Lubaton's individual income tax return for calendar year 2007.

2. On or about May 29, 2008, at Midlothian, in the Northern District of Illinois, Eastern Division, and elsewhere,

KENNEDY LOMILLO,

defendant herein, willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service of a joint U.S. Individual Income Tax Return (Form 1040 with schedules and attachments) of Lubaton and her husband for calendar year 2007, which tax return was false and fraudulent as to material matters, in that such tax return falsely stated that the income of Lubaton and her husband from S corporations was $174,108 (line 17 and Schedule E) and that their total income was $546,442

(line 22), when in fact, as LOMILLO knew and believed their income from S corporations and their total income during 2007 were substantially greater than those amounts;

In violation of Title 26, United States Code, Section 7206(2).

## COUNT SIXTY-EIGHT
### (Filing a False Tax Return)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.      At times material to Count Sixty-Eight of this superseding indictment:

a.      Perpetual Home Health, Inc. ("Perpetual") was an "S corporation" within the meaning of Subchapter S of Chapter 1 of the Internal Revenue Code.

b.      Defendant JASSY GABRIEL was a shareholder of Perpetual. As such, JASSY GABRIEL was required to report his proportional share of Perpetual's income on his individual income tax returns.

2.      On or about October 13, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JASSY GABRIEL,

defendant herein, who during calendar year 2007 was a resident of Chicago, Illinois, willfully made and subscribed, and caused to be made and subscribed, an Amended U.S. Individual Income Tax Return (Form 1040X) for calendar year 2007, which tax return was verified by a written declaration that it was made under penalties of perjury, was filed with the Internal Revenue Service, and which JASSY GABRIEL did not believe to be true and correct as to every material matter, in that such tax return falsely stated on line 1C that his adjusted gross income was $603,974, when in fact, as he knew and believed, his adjusted gross income during 2007 was substantially greater than $603,974;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT SIXTY-NINE
### (Aiding and Assisting in the Preparation of a False Tax Return)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1.    At times material to Count Sixty-Nine of this superseding indictment:

      a.    Perpetual Home Health, Inc. ("Perpetual") was an "S corporation" within the meaning of Subchapter S of Chapter 1 of the Internal Revenue Code.

      b.    Jassy Gabriel was a shareholder of Perpetual. As such, Jassy Gabriel was required to report his proportional share of Perpetual's income on his individual income tax returns.

      c.    Defendant KENNEDY LOMILLO provided bookkeeping and payroll services to Perpetual. LOMILLO also prepared Perpetual's corporate tax return for calendar year 2007.

2.    On or about October 13, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### KENNEDY LOMILLO,

defendant herein, willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service of an Amended U.S. Individual Income Tax Return (Form 1040X) of Jassy Gabriel for calendar year 2007, which tax return was false and fraudulent as to material matters, in that such tax return falsely stated on line 1C that Jassy Gabriel's adjusted gross income was $603,974, when in fact, as LOMILLO knew and believed, Jassy Gabriel's adjusted gross income during 2007 was substantially

65

greater than $603,974;

      In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION ONE
### (Proceeds of Health Care Fraud Offenses)

The SPECIAL FEBRUARY 2011-1 GRAND JURY alleges:

1.      The allegations in Counts One through Forty-Four of this superseding indictment are realleged and incorporated herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2.      As a result of their violations of Title 18, United States Code, Sections 1347 and 1349, as alleged in Counts One through Forty-Four,

> JACINTO "JOHN" GABRIEL, JR.,
> JASSY GABRIEL, and
> STELLA LUBATON,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all right, title, and interest they may have in any property, real and personal, that constitutes and was derived, directly and indirectly, from gross proceeds traceable to the commission of the offenses.

3.      The interests of defendants JOHN GABRIEL, JASSY GABRIEL, and STELLA LUBATON subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7) include, but are not limited to, the following:

        a.      the sum of $20,000,000; and

        b.      certain real property located on Chestnut Street in Liverpool, Illinois, property index number ("PIN") 19-20-25-212-005-0040.

4.      If any of the property subject to forfeiture pursuant to Title 18, United States

67

Code, Section 982(a)(7), as a result of any act or omission by defendants JOHN GABRIEL,

JASSY GABRIEL, and STELLA LUBATON:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute assets under the provisions of

Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code,

Section 982(b)(1);

All pursuant to Title 18, United States Code, Section 982(a)(7).

68

## FORFEITURE ALLEGATION TWO
### (Funds Involved in Money Laundering Offenses)

The SPECIAL FEBRUARY 2011-1 GRAND JURY further alleges:

1.      The allegations in Counts Forty-Eight through Fifty-Eight of this superseding indictment are realleged and incorporated herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

2.      As a result of his violations of Title 18, United States Code, Section 1956(a)(1)(B)(ii), as alleged in Counts Forty-Eight through Fifty-Eight,

JACINTO "JOHN" GABRIEL, JR.,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all right, title, and interest which he may have in any property, real and personal, involved in such offenses, and any property traceable to such property.

3.      The interests of defendant JOHN GABRIEL subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1) include, but are not limited to, the sum of $91,000.

4.      If any of the property subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission by defendant JOHN GABRIEL:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

69

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute assets under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1);

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY