UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 11 CR 54-8 |
| v. ) | |
| ) | |
| JAMES DAVIS ) | Judge: Charles R. Norgle, Sr. |

**DEFENDANT JAMES DAVIS' SENTENCING MEMORANDUM**

Defendant, James Davis, by and through his attorney, Daniel M. Purdom, for his Sentencing Memorandum, states as follows:

1. **Introduction**

Defendant James Davis stands before the Court humbled and embarrassed for the shame he has brought upon himself and his family. Mr. Davis, pursuant to a plea declaration, entered a guilty plea to one count of conspiracy to commit health care fraud in violation of 18 U.S.C. §1349. For the reasons set forth below, Mr. Davis respectfully requests that the Court impose a sentence of probation, a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a).

2. **Legal Standard**

As the Court is well aware, the Supreme Court's decision in *U.S. v. Booker*, 125 S.Ct. 738 (2005), restored the district courts' ability to consider factors other than the sentencing range prescribed by the advisory guidelines and tailor a sentence in accordance with the individual aspects of a case and a defendant. The advisory guidelines range is only one of many factors to be considered in determining a defendant's sentence, and district courts must not presume that a guideline sentence is reasonable. *Rita v. U.S.*, 127 S.Ct. 2456 (2007); *Gall v. U.S.*, 128 S.Ct. 586 (2007). In order to comply with the mandate to impose a sentence that is "sufficient, but not greater than necessary," courts are required to consider other factors under 18 U.S.C. § 3553(a),

including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for a sentence to meet the purposes of sentencing, namely, just punishment, deterrence, protection of the public from further crimes by the defendant and rehabilitation. *Id*.

When considering all the § 3553(a) factors, the sentencing court must not elevate the guideline range over any other consideration in § 3553(a). *U.S. v. Schmidt*, 495 F.3d 860, 864-65 (7th Cir. 2007). A court's choice to sentence inside or outside the guideline range is discretionary; and as long as all of the factors under § 3553(a) have been considered a court's "freedom to impose a reasonable sentence outside the range is unfettered." *U.S. v. Dean*, 414 F.3d 725, 795 (7th Cir. 2005).

3. **Applicable Advisory Guideline Range**

   a. **The Government's Loss Calculations Overstate the Seriousness of the Offense.**

Based upon the government's calculations, it seeks to attribute the entire loss caused by Perpetual during the time that Mr. Davis was employed. Under that analysis, where the attributable loss is $18,250,117, a 20 level increase is appropriate under § 2B1.1(b)(1)(K) (where the loss is more than $7 million but less than $20 million). Mr. Davis does not contest the government's calculations nor the manner at which it arrived at these numbers. However, as addressed more fully below, Mr. Davis contends that the loss amount overstates the seriousness of the offense, resulting in a sentencing range which is unreasonable under the Federal Sentencing Guidelines and 18 U.S.C. §3553(a). Not only was Mr. Davis a minor participant in the conspiracy, but he did not realize much, if any of the proceeds of the scheme, and in fact was himself victimized by Gabriel's actions during the course of the conspiracy.

2

b. **Acceptance of Responsibility**

For purposes of calculating any advisory sentencing guideline, Mr. Davis should absolutely be afforded the maximum reduction for acceptance of responsibility. Mr. Davis has been completely forthright about his actions and has taken full responsibility for them. Mr. Davis waived his constitutional right to an indictment in this matter, sparing the government the time, money and resources to formally charge him in this case. Mr. Davis has pleaded guilty per his plea declaration, admitting guilt and taking personal responsibility for his actions. As recognized by the Probation Officer, Mr. Davis has clearly demonstrated acceptance of responsibility for the offense and is deserving of a two level reduction under USSG § 3E1.1(a). Mr. Davis has also assisted authorities both in the investigation and prosecution of his own misconduct by timely notifying the government of the intention to enter a plea of guilty, and doing so at a very early stage in the criminal case. He has likewise met with prosecutors on several occasions to assist with their prosecution. Accordingly, and as acknowledged by the Probation Officer, the offense level should be decreased by one additional level pursuant to USSG § 3E1.1(b).

c. **Sophisticated Means**

Mr. Davis disagrees with the Government's position that the sophisticated means enhancement should apply under §2B1.1(b)(9)(c). As the Government has clearly recognized, Mr. Davis was a minor participant in the scheme, only conducting basic data entry at Jacinto Gabriel's direction. He was merely a pawn used by Jacinto Gabriel to reap millions for Gabriel's sole benefit. The Government takes the position that, while Mr. Davis and other similarly situated defendants may have been minor participants, the scheme itself was very complex and sophisticated, making the enhancement appropriate. Mr. Davis's participation in the scheme, however, clearly did not involve any sophisticated means, merely entering data as directed by his

superior. In the event this Court agrees with the Government, Mr. Davis is nonetheless entitled to a variance based upon his very minor role in the conspiracy.

### d. Minor Participant

The Parties agree that Mr. Davis was a minor participant in the conspiracy, entitling him to a two-level decrease under §3B1.2(b).

### e. Criminal History Category

Mr. Davis has no criminal history. Accordingly, his criminal history points equal 0 and his criminal history category is I.

### 4. § 3553(a) Factors Warranting a Sentence of Probation

### a. Nature and Circumstances of the Offense

Mr. Davis is not a highly educated individual. He only received his high school diploma and has only had some college education. Prior to working for Gabriel, Mr. Davis had no prior experience in the healthcare field, and no relevant experience from which to draw. Mr. Davis had met Gabriel previously and Gabriel recruited him to come work for Perpetual. Mr. Davis was hired by Gabriel in 2006 to perform data entry, a job requiring minimal skill and offering decent pay.

Having no background in the field, all of Mr. Davis' training was provided by Gabriel, and Mr. Davis mistakenly relied upon Gabriel to teach him to do his job the right way. Gabriel provided training on the software used for entering patient information, and when Gabriel provided that information on "cheat sheets," instructing Mr. Davis to enter the information that was contained on these sheets, Mr. Davis had no reason to question Gabriel, nor was he in a position to do so. Mr. Davis entered the information provided by his boss as he had been instructed and trained to do.

Mr. Davis admits that he eventually learned that the information contained on the cheat sheets came directly from Gabriel, having no relation to the actual care provided (or not provided) to the patients. Likewise, Mr. Davis eventually learned that the information that was being provided by Gabriel was being used solely for the purpose of maximizing reimbursements being made by Medicare to Perpetual and eventually Legacy, with no regard to the services actually provided. Despite this, Mr. Davis continued working as he had, entering the data provided to him by his boss. Mr. Davis valued his job, a job which allowed him to provide for his family, and felt he could not afford to put that at risk. Mr. Davis fully acknowledges that this rationalization serves as no excuse for his behavior, however, and he is terribly sorry for this.

Mr. Davis recognizes that in retrospect any benefits that he received by working for Perpetual and Legacy are far outweighed by the consequences. Those consequences go beyond the instant offense and the punishment that Mr. Davis now faces. In addition to the shame and embarrassment Mr. Davis endured as a result of this criminal scheme, for which Mr. Davis takes full responsibility for the role he played, Gabriel has directly damaged Mr. Davis and his family. Taking advantage of the situation on multiple occasions, Gabriel would write checks on either Perpetual's or Legacy's accounts made payable to Mr. Davis or to his wife. Per instructions from Gabriel, Mr. Davis would cash these checks and give Gabriel the money, out of which he would then occasionally provide Mr. Davis cash in return, ranging from about $50.00 to $100.00. Without Mr. Davis' knowledge, however, Gabriel caused Perpetual to issue Form 1099 for these checks Mr. Davis was cashing for Gabriel. As a result, this caused Mr. Davis to incur tax liability of those funds, as well as headaches and additional attorney's fees in having to address these issues with the IRS when Mr. Davis failed to report this "income" (which he did not receive) on his tax returns, which income was actually received by Gabriel.

Likewise, and as set forth in Mr. Davis' plea agreement, at Gabriel's direction, Mr. Davis allowed Gabriel to use his name to lease several vehicles for Gabriel's and Perpetual's use and enjoyment, deriving no personal gain himself. Mr. Davis ended up having to pay over $10,000 on monthly payments for two cars used by Gabriel until Mr. Davis was able to sell one and the FBI seized the other. As a result of Gabriel's actions, Mr. Davis was required to pay the monthly car payments as well as legal fees to clear up the tax liability resulting from the false Forms 1099 that Perpetual issued to him. These car payments and debts led Mr. Davis to file Chapter 7 bankruptcy protection in Sept 2011.

### b. History and Characteristics of Mr. Davis

As noted above, Mr. Davis is not a highly educated individual, only holding a high school diploma. Nonetheless, he has worked hard all his life to provide for his wife of almost ten years and his two young children, ages 8 and 4. Despite his troubles, he has remained devoted to his family, dedicated to provide for them even in the face of the hurdles the instant conviction presents. Each of the character letters attached hereto as Exhibit A portray Mr. Davis as being completely devoted to his family. (*See* Character Letters, **Exhibit A**). His daughters' letters/drawings depict a father that they know to be incredibly involved in their lives, providing a very positive influence. His wife, Rossana Davis, explains this even further, describing Mr. Davis as an "extraordinary husband and an excellent father." She also explains that they are active in their church and with their daughters' after school activities.

Mrs. Davis also relates Mr. Davis' devotion not just to his wife and kids, but also to his Mother who is 71 years old and recently lost her other son, Mr. Davis' brother, in a tragic accident. Since his brothers' death, Mr. Davis has taken on a much larger role in the care of his mother, whose health is deteriorating. Mrs. Davis explains that Mr. Davis uses his lunch hour to go visit his mother every single day just to make sure that she is okay.

Mr. Davis has always been and remains incredibly devoted to his family. In fact, since the indictment, Mr. Davis has taken classes in order to obtain his Certificate in Supply Chain Management so that he could continue to provide for his family. Mr. Davis has, with the exception of this offense, led a law-abiding and upstanding life. If Mr. Davis were sent to prison, his family would suffer greatly. It is hard to imagine how his wife and kids would cope without him, not to mention his elderly mother whose health is deteriorating and who has already recently lost her other son. The financial strain and emotional void left in his absence would be enormous and detrimental to his family, and particularly to his two young daughters.

Mr. Davis is extremely remorseful and ashamed of his conduct in this offense, and he is deeply saddened by how it has impacted his family and friends. He bears the burden of his mistake and has taken responsibility for it. Mr. Davis is 39 years old and will continue to pay for his actions into the foreseeable future. His age and the circumstances of the offense, as well as his particular and unique characteristics, demonstrate that Mr. Davis is not going to be a repeat offender or engage in any similar conduct. Mr. Davis only requests that the Court consider his aberrant conduct in the context of his whole life and impose a sentence that will allow him to continue to care for himself and his family and make restitution.

        c.      **Potential Sentence Disparities**

Pursuant to §3553(a)(6), another factor to be considered by the Court is the need to avoid unwarranted sentence disparities among defendants with similar records and who had been found guilty of similar conduct. Accordingly, this Court should consider the sentences that it has imposed on the other defendants in this case and assess whether the proposed sentence would be proportionate to those imposed on similarly situated individuals. *United States v. Bradley*, 675 F.3d 1021, 1027 (7th Cir. 2012) (vacating sentence based in part on the failure to consider disparities).

To date, the following sentences have been imposed:

| Defendant | Date of Sentencing | Count | Sentence Imposed |
|---|---|---|---|
| Ricardo Gonzales | August 16, 2013 | 1 | 3 Years Probation |
| Rosalie Gonzales | August 16, 2013 | 46 | 2 Years Probation |
| Charito Dela Torre | July 11, 2014 | 65 | 3 Years Probation |
| Regelina Queenie David | August 22, 2014 | 1 | 1 day imprisonment (credited for time served); 2 years supervision |
| Nessli Reyes | November 13, 2014 | 1 | 2 Years Probation |

As the Government has recognized in its Version of the Offense, Davis was a low-level employee of Perpetual, performing data-entry at Gabriel's Direction. In fact, the Presentence Investigation Report sets forth a tiered system of culpability in the scheme. (PSR, ¶22). Under that structure, Gabriel started the whole thing and was in the first tier of culpability. Pursuant to the PSR and the Government, defendants Jassy Gabriel, Lubaton, Reyes, Ricardo Gonzales and Dela Torre were in "[t]he second tier of culpability of the individuals charged in the instant scheme." (PSR, ¶22). Defendants Davis, Galang, Pacis, David and Lomillo were in the next tier, referred to as "low level employees but necessary to the scheme." (PSR, ¶22). Finally, Rosalie Gonzales was considered the least culpable. (PSR, ¶22). Based on this structure explained by the Government to probation, three of the above identified defendants having greater culpability in the scheme than Davis have already been sentenced, Ricardo Gonzales, Nessli Reyes and Charito Dela Torre. Each of them received terms of probation. Co-defendant David, who is in the same category as Mr. Davis, received a sentence of one day imprisonment, credited for time served, and a term of supervision.

Based upon the representations made to Probation by the government as to levels of culpability and the sentences imposed by this Court to date, it is necessary that this Court, in order to avoid sentencing disparities among similarly situated defendants, impose a term of

probation on Mr. Davis, similar to those sentences imposed upon the other defendants in this matter to date.

### d. Just Punishment and Deterrence

The sentencing goals would be satisfied without a term of imprisonment. As expressed above, Mr. Davis acknowledges his mistakes, is humbled and embarrassed. A term of probation, however, would adequately serve the interests of justice and would sufficiently punish Mr. Davis.

In addition to the criminal sanctions he now faces, Mr. Davis has already been significantly punished for this offense. Because of his offense, Mr. Davis will forever be branded a convicted felon. He will constantly need to deal with the inevitable obstacles associated with this stigma. His felony conviction will negatively impact his future in terms of career possibilities, earning capacity and his ability to provide for his family. This price will be felt forever, regardless of the sentence this Court imposes. Additionally, while a participant of the conspiracy, Mr. Davis was at the same time a victim of Jacinto Gabriel's. Gabriel's conduct had a significant financial impact on Mr. Davis, causing Mr. Davis to incur tax liability for funds which he never received from Gabriel, as well as headaches and attorney's fees he had to incur in addressing these issues with the IRS when he failed to report this "income" that he did not receive. Likewise, Mr. Davis naively allowed Gabriel to use his name to lease several vehicles for Gabriel's and Perpetual's use and enjoyment, causing Mr. Davis to make monthly payments in excess of $10,000. These IRS liabilities, expenses and debts ultimately required Mr. Davis to file for Chapter 7 bankruptcy protection in September 2011.

Consideration of the collateral consequences of the offense is consistent with §3553(a)(2)(A) and (B)'s directive that sentences reflect "just punishment" and "adequate deterrence." *U.S. v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (non-guideline sentence

imposed where the defendant lost his teaching certificate and state pension). Certainly, the collateral consequences Mr. Davis has suffered will alone be enough to deter him from any future offenses.

Mr. Davis is 39 years old, and his lack of any prior criminal history clearly indicates that this offense was aberrant behavior which will not recur. He will never be in the criminal justice system again. A prison sentence will add nothing to further deter this man—with an unblemished record until now—from further crimes.

A sentence of probation would be significant punishment for Mr. Davis. As the Supreme Court in *Gall* stated, probation is far from a free pass, and "[o]ffenders on probation are . . . subject to several standard conditions that substantially restrict their liberty." *Gall v. U.S.*, 128 S.Ct. 586, 595. While Mr. Davis would be subject to numerous probationary restrictions and conditions curtailing his liberty, a sentence of probation would allow Mr. Davis to restore some financial stability and continue his responsibilities to work and family. Mr. Davis would be a model probationer as evidenced by his full compliance and reporting with Pretrial Services while on pretrial release.

5.  **Conclusion**

Mr. Davis offers the Court no excuses, only a humble and respectful request that the Court consider the circumstances of this offense in the context of the circumstances he faced, his acceptance of responsibility, full cooperation and substantial assistance provided to the Government, his lack of any criminal history, his good character as a family man and friend, the impact of a prison sentence on his family, and the significant other punishment he has already suffered, and will continue to suffer, as a result of his felony conviction and his involvement in

the conspiracy. In light of these considerations, Mr. Davis respectfully submits that a sentence of probation, is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

Respectfully submitted,

HINSHAW & CULBERTSON LLP


By: s/Daniel M. Purdom
  Daniel M. Purdom

Daniel M. Purdom
Hinshaw & Culbertson LLP
4343 Commerce Ct., Suite 415
Lisle, IL 60532
(630) 505-4110
dpurdom@hinshawlaw.co.